Howard W. Rubinstein (Fla. SBN: 104108)
    howardr@pdq.net
LAW OFFICE OF HOWARD W. RUBINSTEIN
P.O. Box 4839
Aspen, Colorado 81612
Telephone: (832) 715-2788
Facsimile: (561) 688-0630
*(To apply as counsel pro hac vice)*

Harold M. Hewell (Cal. SBN: 171210)
    hmhewell@hewell-lawfirm.com
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
Telephone: (619) 235-6854
Facsimile: (888) 298-0177

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CALIFORNIA NORTHERN DISTRICT (SAN FRANCISCO)

| | |
|---|---|
| **JULIA MEAUNRIT,** as an individual, and on behalf of all others similarly situated,<br><br><br>    *Plaintiff,*<br><br>*vs.*<br><br><br><br><br><br>**SNAPPLE BEVERAGE CORP.,** a Delaware corporation,<br><br><br>    *Defendants.* | Civil No. 3:10-cv-05153-JSW<br><br>Hon. Jeffrey S. White<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Class Action*<br>*Jury Trial Requested*<br>Case Filed November 12, 2010<br><br>**HEARING:**<br>**DATE: JUNE 3, 2011**<br>**TIME: 9:00 A.M.**<br>**COURTROOM: 11** |

# **TABLE OF CONTENTS**

I. Introduction...............................................................................................................  1

II. Facts as alleged in the First Amended Complaint....................................................  1

III. Argument..................................................................................................................  4

    A.  The First Amended Complaint readily states claims upon which relief can

        be granted.............................................................................................................  4

    B.  Plaintiff has adequately pleaded a basis for all of her claims................................  5

        1.  The First Amended Complaint is pleaded with the particularity that Rule

            9(b) requires......................................................................................................  5

        2.  The UCL claims are sufficiently stated............................................................  5

        3.  The FAL claim meets the pleading standard.....................................................  10

        4.  The CLRA claims are sufficiently pled............................................................  11

        5.  The Breach of Warranty claim is properly stated.............................................  12

    C.  Plaintiff readily meets the standing requirements to bring this action................  13

    D.  Should the court find the First Amended Complaint deficient in any way,

        Plaintiff can readily cure by amendment..........................................................  15

IV. Conclusion................................................................................................................  15

1

# **TABLE OF AUTHORITIES**

2

3 *Federal Cases:*

4 *Ashcroft v. Iqbal,*

5      129 S. Ct. 1937 (2009) ............................................................ 4

6 *Bell Atl. Corp. v. Twombly,*

7      550 U.S. 544 (2007) .............................................................. 4

8 *Freeman v. Time, Inc.,*

9      68 F.3d 285 (9th Cir. 1995) ................................................... 7, 10

10 *FTC v. Proctor & Gamble Co.*

11      386 U.S. 568 (1967) .............................................................. 9

12 *Gilligan v. Jamco Dev. Corp.,*

13      108 F.3d 246 (9th Cir. 1997) ................................................. 4

14 *In re Sony Grand Wega,*

15      --- F. Supp. 2d ----, 2010 WL 4892114 (S.D. Cal. Nov. 30, 2010) ................ 6

16 *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and*

17 *Prods. Liab. Litig.,*

18      --- F. Supp. 2d ----, 2010 WL 4867562 (C.D. Cal. Nov. 20, 2010) ................ 10

19 *.Kearn v. Ford Motor Co.,*

20      567 F.3d 1120 (9th Cir. 2009) ............................................... 5, 6

21 *McKinniss v. Sunny Delight Beverages Co.,*

22      No. CV 09-02034, 2007 WL 4766525, (C.D. Cal. Sept. 4, 2007) ................ 12

23 *Peviani v. Natural Balance, Inc.,*

24      --- F.R.D. ----, 2011 WL 754958, (S.D. Cal. Feb. 24, 2011) ........................... 11

25 *Moyo v. Gomez,*

26      32 F.3d 1382 (9th Cir. 1994) ................................................. 4

27 *Rubio v. Capital One Bank,*

28      613 F.3d 1195 (9th Cir. 2010) ............................................... 6

*Sanders v. Apple, Inc.,*

    672 F. Supp. 2d 978 (N.D. Cal. 2009)...................................................................... 7

*Scheuer v. Rhodes,*

    416 U.S. 232 (1974) ............................................................................................... 4

*Starr v. Baca,*

    --- F.3d ----, 2011 WL 477094, (9th Cir. Feb. 11, 2011)..................................... 4

*Tietsworth v. Sears,*

    720 F. Supp. 2d 1123 (N.D. Cal. 2010)............................................................... 6

*United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar,*

    265 U.S. 438 (1924).............................................................................................. 9

*Webb v. Carter's Inc.,*

    --- F.R.D. ----, 2011 WL 3439631, (C.D. Cal. Feb. 3, 2011).............................. 6

*Williams v. Gerber Products Co.,*

    552 F.3d 934 (9th Cir. 2008)...................................................................... 7, 10, 11

*Yumul v. Smart Balance, Inc.,*

    733 F. Supp. 2d 1117 (C.D. Cal. 2010)........................................................... 7, 11


**State Cases:**

*Bardin v. Daimlerchrysler Corp.,*

    136 Cal. App. 4th 1255 (Cal. Ct. App. 2006)...................................................... 6, 9

*Camacho v. Auto. Club. of S. Ca.,*

    48 Cal. Rptr. 3d 770 (Cal. Ct. App. 2006).......................................................... 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*

    973 P.2d 527 (Cal. 1999)..................................................................................... 6

*Cortez v. Purolater Air Filtration Prods. Co.,*

    23 Cal. 4th 163 (2003)........................................................................................ 14

*Davis v. Ford Motor Credit Co.,*

    101 Cal. Rptr. 3d 697 (Cal. Ct.App. 2009)........................................................ 6

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (Cal. 2002)...................................................................... 5, 10

*Keith v. Buchanan,*
    173 Cal. Appl. 3d 13 (Cal. App. 1985)...................................................... 12

*Korea Supply Co. v. Lockheed Martin Corp.,*
    131 Cal. Rptr. 2d 29 (Cal. 2003)............................................................... 6

*Kwikset Corp. v. Superior Court,*
    --- Cal. Rptr. 3d ----, 2011 WL 240278, (Cal. Jan. 27, 2011)........................... 5, 10, 13

*Lavie v. Procter & Gamble Co.,*
    105 Cal.App.4th 496 (2003)....................................................................... 8

*Mass. Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (Cal. Ct. App. 2002)............................................. 11

*McKell v. Wash. Mut., Inc.,*
    49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006).............................................. 6


**Federal Rules:**

Fed. R. Civ. P. 8.................................................................................................... 1

Fed. R. Civ. P. 8(a)............................................................................................... 4

Fed. R. Civ. P. 8(a)(2).......................................................................................... 4

Fed. R. Civ. P. 9(b)............................................................................................... 1, 5

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 4


**State Statutes:**

California Bus. & Prof. Code § 17200.............................................................. 1, 6

California Bus. & Prof. Code § 17500.............................................................. 1, 10

California Civil Code § 1750............................................................................... 1

California Civil Code § 1770(a)(5).................................................................... 11

California Civil Code § 1770(a)(7).................................................................... 11

California Civil Code §1780(a)............................................................. 11

California Civil Code § 1782(d)............................................................ 12

California Civil Code § 3343................................................................ 14

Plaintiff Julia Meaunrit files this response in opposition to Defendant's motion to dismiss ("Motion") the First Amended Complaint ("FAC"), and submits the memorandum of points and authorities below in support of that opposition.

## I. INTRODUCTION

Ms. Meaunrit brought this action to secure, among other things, equitable relief and actual damages on a class basis for consumers misled by the representations made by defendant, Snapple Beverage Corp. ("Snapple"), to promote the sale of its product, "Snapple® Acai Mixed Berry Red Tea Immunity" ("Product"), and has alleged violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 et seq.; California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500 et seq.; and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. She also seeks damages for the breach of express warranty.

Snapple's Motion is nothing more than a succession of poorly constructed straw men that Defendant takes down, all the while ignoring the allegations actually pleaded in the FAC. The FAC *is* properly stated and meets all of the pleading requirements found in Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). The Motion borders on the frivolous and should be denied in its entirety.

## II. FACTS AS ALLEGED IN THE FIRST AMENDED COMPLAINT

Ms. Meaunrit purchased the Product on a number of occasions, beginning in or around April 2010, from the Safeway grocery store located at Alameda Town Center, 2130 S. Shore Center, Alameda, California 94501. In purchasing the Product, Ms. Meaunrit saw and relied on the labeling and advertising for it. She has been damaged by her purchase of the Product because the labeling and advertising for the Product was and is false and/or misleading. The labeling and advertising for the Product relied upon by Ms. Meaunrit was prepared and/or approved by Snapple and its agents, and was disseminated by Snapple and its agents through labeling and advertising containing the misrepresentations alleged herein. The labeling and advertising for the Product was designed to encourage consumers to purchase the Product. FAC, 3:5-15.

An increase in the number of health-conscious consumers, coupled with scientific revelations regarding the nutritional content of food, has led to a rapidly growing market for food that is promoted as offering a unique health benefit. In an effort to corner a portion of that market, unscrupulous companies routinely toss a small amount of a particular substance into a product and advertise the product as though it could provide results beyond any reasonable expectation.

Often such substances contribute no scientifically proven health benefits, or the products contain the substances in such small amounts that any real benefit is illusory. Nevertheless, companies have engaged in marketing campaigns that suggest to health-conscious consumers that a particular product supplemented with a particular substance will bolster the user's immune system and promote good health. The substance added to the Product is often marketed as an exotic supplement.

In its marketing of the Product, Snapple adopted this approach. Through a variety of advertising including, but not limited to, the Internet and the packaging and labeling of the Product, Snapple made false representations regarding the benefits of the Product.

On the front of the Product label (the Principal Display Panel, or "PDP") Snapple posted the word "IMMUNITY" in all-capital letters. On the Internet, Snapple has represented that:

> In our search for the perfect tea, we scoured the planet and found rooibos ("roy-boss"), a rare antioxidant rich tea that only grows in the Western Cape region of South Africa. … We topped it off with real fruit juice and Vitamin C to help support a healthy immune system. So go ahead, enjoy our delicious rooibos. And work on the pronunciation later.[1] … It's rich in

---

[1] These internet representations for the Product were found on Snapple's website (www.snapple.com) as recently as on or about August 18, 2010, but have since been removed.

antioxidant vitamin C which helps support a healthy immune system.[2]

Snapple's claims for the Product led consumers to believe that rooibos and other ingredients contained in the Product would have the tangible result of helping to support their immune system. This is false, deceptive, and misleading. Snapple has no competent and reliable scientific evidence to support such claims for the Product. Indeed, Snapple cites no clinical trial or study it has conducted or commissioned on the purported benefits of the Product because, presumably, it has not conducted or commissioned any.

Despite this lack of competent and reliable scientific evidence, Snapple introduced the Product into the marketplace to profit from the increasing popularity of "functional" foods. Snapple has prioritized profits ahead of its customers by altogether failing to conduct or commission any clinical trials or studies whatsoever concerning the benefits and risks of ingesting rooibos.

Snapple also failed to adequately disclose whether any of the other ingredients found in the Product (whether, by their presence in the Product, or by the form and quantity of those ingredients in the Product) might offset or counteract the purported immunity benefits of rooibos and other promoted ingredients.

As a result of Snapple's claims for the Product, reasonable consumers were led to believe that ingesting rooibos, coupled with other ingredients contained in the Product, would result in tangible benefits to their immunity and health.

During the course of its false, misleading, and deceptive advertising campaign, Snapple has sold many thousands of units of the Product based upon Snapple's false promises. Plaintiff and members of the putative Class have suffered injury in fact and have lost money as a result of Snapple's false representations. The Product, as purchased by the Plaintiff and the Class, was and is unsatisfactory and worth less than the amount

---

[2] Snapple failed to adequately disclose whether this "antioxidant vitamin C" is synthetic and/or unnatural in form, and whether the form used actually procures the benefits claimed by Snapple.

paid for it. Plaintiff would not have purchased the Product, but for Snapple's representations that consuming the Product would boost her immunity and good health. FAC, ¶¶ 21-36, inclusive.

### III. ARGUMENT

**A.    The First Amended Complaint Readily States Claims Upon Which Relief Can Be Granted.**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. See *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556). The issue on a motion to dismiss for failure to state a claim "is not whether the [claimant] will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" asserted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

As the Ninth Circuit recently stated, a complaint must be (1) "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and (2) "sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca,* --- F.3d ----, 2011 WL 477094, at *14 (9th Cir. Feb. 11, 2011).

**B.      Plaintiff Has Adequately Pleaded a Basis For All of Her Claims.**

   **1.      The   First   Amended Complaint is pleaded with the particularity that Rule 9(b) requires.**

Defendant contends that Plaintiff's First Amended Complaint should be subject to the heightened pleading requirements of Rule 9(b). Plaintiff concedes that her claims fall under Rule 9(b) because they are based on the deceptive representations made for the Product. "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearn v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess,* 317 F.3d at 1106) (internal quotation marks omitted). This requires a plaintiff to provide the "who, what, when, where, and how of the misconduct charged." Id. (quoting *Vess,* 317 F.3d at 1106).

Plaintiff contends that she has set forth allegations of the circumstances constituting the alleged fraud with sufficient particularity to satisfy Rule 9(b). Plaintiff has alleged the "who": Snapple. FAC, ¶ 25-26. She has alleged the "what," "where" and "how": the Product and the deceptive representations Snapple made regarding the Product on the PDP and Snapple's website. FAC, ¶ 26. Additionally, she has alleged the "when": "…on a number of occasions, beginning in or around April 2010, from the Safeway grocery store located at Alameda Town Center, 2130 S. Shore Center, Alameda, California 94501." FAC, 3:5-8.

Accordingly, Plaintiff has stated her claims with the specificity required under Rule 9(b).

   **2.      The UCL claims are sufficiently stated.**

The UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Superior Court,* --- Cal. Rptr. 3d ----, 2011 WL 240278, at *3 (Cal. Jan. 27, 2011) (quoting *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 949 (Cal. 2002)) (internal quotation marks omitted). The

UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Profs. Code § 17200. "Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns*, 567 F.3d at 1127).

Under the unlawful prong, the statute "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.,* 131 Cal. Rptr. 2d 29, 37 (Cal. 2003) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 973 P.2d 527, 539 (Cal. 1999)) (internal quotation marks omitted).

Under the unfair prong, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. Ca.,* 48 Cal. Rptr. 3d 770, 777 (Cal. Ct. App. 2006); *Davis v. Ford Motor Credit Co.,* 101 Cal. Rptr. 3d 697, 708 (Cal. Ct. App. 2009) (adopting *Camacho's* definition of "unfair"); *Webb v. Carter's Inc.,* --- F.R.D. ----, 2011 WL 3439631, at *12 (C.D. Cal. Feb. 3, 2011) (same); *In re Sony Grand Wega,* --- F. Supp. 2d ----, 2010 WL 4892114, at *7 (S.D. Cal. Nov. 30, 2010) (same); *Tietsworth v. Sears,* 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (same).

Alternatively, for an act to be unfair, the alleged conduct must "offend[ ] an established public policy [tethered to specific constitutional, statutory or regulatory provisions]," or be "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1268, 1272 (Cal. Ct. App. 2006) (acknowledging the split within California circuit courts over the definition of "unfair" in the context of the UCL).

Finally, to state a claim under the fraudulent prong, Plaintiff must allege conduct that would likely deceive members of the public, i.e. a "reasonable consumer." See *McKell v. Wash. Mut., Inc.,* 49 Cal. Rptr. 3d 227, 239 (Cal. Ct. App. 2006); *Bardin,* 136

Cal. App. 4th at 1274; see *Sanders v. Apple, Inc.,* 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009).

Plaintiff alleges that the Product's label's misrepresentations violate all three prongs of the UCL. FAC ¶¶ 61-66. Plaintiff bases her "unlawful" claim on Defendant's alleged violations of the FAL and CLRA. Id. ¶ 66. As will be discussed below, Plaintiff has sufficiently alleged her FAL and CLRA claims, and therefore has stated a UCL claim under the unlawful prong. This alone is sufficient to allege a UCL claim.

Defendant argues that Plaintiff's "UCL, FAL and CLRA claims fail because no reasonable consumer could be misled by any of the challenged statements." Motion, 14:17-18. Contrary to Defendant's argument, "California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008); *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1126 (C.D. Cal. 2010).

To satisfy the reasonable consumer standard on a motion to dismiss, Plaintiff need only "show that members of the public are likely to be deceived . . . [by] not only advertising which is false, but also advertising which, although true, *is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public*[emphasis added]." *Williams,* 552 F.3d at 938 (citing *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995)).

Plaintiff has sufficiently alleged facts showing that Snapple's representations for the Product, made on the label PDP and its website, have a capacity, likelihood, or tendency to deceive or confuse the public. As Plaintiff alleges, "An increase in the number of health-conscious consumers, coupled with scientific revelations regarding the nutritional content of food, has led to a rapidly growing market for food that is promoted as offering a unique health benefit." FAC, ¶ 21. "[C]ompanies have engaged in marketing campaigns that suggest to health-conscious consumers that a particular product supplemented with a particular substance will bolster the user's immune system

and promote good health. The substance added to the Product is often marketed as an exotic supplement." FAC, ¶ 24. "In its marketing of the Product, Snapple adopted this approach. Through a variety of advertising, including but not limited to the Internet and the packaging and labeling of the Product, Snapple made false representations regarding the benefits of the Product. FAC, ¶25.

The FAC then goes on to cite specific representations made for the Product FAC, ¶ 26, and alleges that, "Snapple introduced the Product into the marketplace to profit from the increasing popularity of 'functional' foods." FAC, 7:18-20. "Snapple also failed to adequately disclose whether any of the other ingredients found in the Product (whether, by their presence in the Product, or by the form and quantity of those ingredients in the Product) might offset or counteract the purported immunity benefits of rooibos and other promoted ingredients." FAC, ¶ 32.

The FAC continues, alleging that "Snapple's claims for the Product led consumers to believe that rooibos and other ingredients contained in the Product would have the tangible result of helping to support their immune system." FAC, ¶ 27. "As a result of Snapple's claims for the Product, reasonable consumers were led to believe that ingesting rooibos, coupled with other ingredients contained in the Product, would result in tangible benefits to their immunity and health."

Surely, as shown above, the FAC has established that the representations for the Product have a capacity, likelihood, or tendency to deceive or confuse the public. The reasonable consumer standard is not a narrow construct. "[A] reasonable consumer may be unwary or trusting," *Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496 506 (2003), and is not required" to investigate the merits of advertising claims." Id. at 504. "[A] reasonable consumer need not be exceptionally acute and sophisticated." Id. at 509.

As Defendant states, Plaintiff has alleged that the claims are false without citing any specific evidence to that effect. However, this is not a case about "unsubstantiated advertising." If the Court determines that the FAC is deficient in not stating specific facts to substantiate the falsity of Defendant's claims for the Product, Plaintiff can readily cure

this by citing to widely recognized scientific studies that have found that "[i]t is thus possible to use Rooibos tea and Black tea as a dietary component to either stimulate *or suppress* immunity" (emphasis added),[3] and that a review and analysis of previous studies "did not find convincing evidence that antioxidant supplements have beneficial effects on mortality."[4] If the Court determines the FAC is insufficient in this aspect, Plaintiff respectfully requests leave to amend to include this information.

Given the above, Plaintiff contends that she has properly stated a claim under the unfair prong of the UCL by the *Bardin* standard; the conduct alleged above offends established public policy tethered to specific statutory provisions and is unethical and unscrupulous. *Bardin,* 136 Cal. App. 4th at 1268, 1272.

The Supreme Court noted more than 80 years ago that, "[i]t is not difficult to choose statements, designs, and devices which will not deceive." *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar,* 265 U.S. 438, 443 (1924). As the California Supreme Court recently noted:

> Simply stated: *labels matter.* The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. (E.g., *FTC v. Proctor & Gamble Co.* (1967) 386 U.S. 568, 572 [noting the

---

[3] Hendricks, Rahzia and Pool, Edmund John (2010) "The *In Vitro* Effects of Rooibos and Black Tea on Immune Pathways", Journal of Immunoassay and Immunochemistry, 31: 2. 169-180. See Exhibit A to Plaintiff's Request for Judicial Notice in Support of Response in Opposition to Defendant's Motion to Dismiss the First Amended Complaint ("Request for Judicial Notice"), Exhibit A.

[4] Bjelakovic, Nikolova, Gluud, Simonetti and Gluud (2007) "Mortality in Randomized Trials of Antioxidant Supplements for Primary and Secondary Prevention Systematic Review and Meta-analysis", JAMA. 2007; 297:842-857. See Request for Judicial Notice, Exhibit B.

central role of advertising and sales promotion in generating market share, where the competing products are functionally identical].) An entire body of law, trademark law (see, e.g., 15 U.S.C. § 1051 et seq. [Lanham Act]), exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their buying decisions.

*Kwikset,* --- Cal. Rptr. 3d ----, 2011 WL 240278, at *18.

Plaintiff respectfully contends that she has met her UCL pleading burden.

### 3. The FAL claim meets the pleading standard.

California's FAL prohibits "any person, firm, corporation, or association or any employee thereof with the intent directly or indirectly to dispose of real or personal property or to perform services" from making or disseminating "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Profs. Code § 17500. FAL claims are also governed by the reasonable consumer test. See *Williams,* 552 F.3d at 938 ("Appellants' claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test." (citing *Freeman,* 68 F.3d at 289)).

Thus, to state an FAL claim, Plaintiff need only allege that members of the public are likely to be deceived by Defendant's representations. *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (Cal. 2009) ("To state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (quoting *Kasky,* 27 Cal. 4th at 951)); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.,* --- F. Supp. 2d ----, 2010 WL 4867562, at *21 (C.D. Cal. Nov. 20, 2010).

Plaintiff has alleged that "Defendant's labeling and advertising representations for the Product are by their very nature unfair, deceptive and/or unlawful within the meaning of California Bus. & Prof. Code § 17500 et seq. The representations were likely to deceive reasonable consumers." FAC ¶ 77. Based on these allegations, and for the

reasons outlined above, Plaintiff contends that she has satisfied the reasonable consumer standard, and has therefore sufficiently alleged an FAL claim.

### 4.    The CLRA claims are sufficiently pled.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The CLRA allows recovery by "[a]ny consumer who suffers any damage as a result of the use or employment by any person" of an unfair or deceptive business practice. Cal. Civ. Code § 1780(a); see Id. § 1770(a). To state a claim under the CLRA, Plaintiff must "show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Mass. Mutual Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1292 (Cal. Ct. App. 2002); see Cal Civ. Code § 1780(a) (stating that plaintiff can recover only if he suffers damage "as a result of" conduct forbidden by the statute).

Deceptive acts under the CLRA include "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." Cal. Civ. Code § 1770(a)(5). They also include "[r]epresenting that goods or services are of a particular standard, quality, or grade…if they are of another." Id. § 1770(a)(7). A CLRA claim based on false advertising is also governed by the reasonable consumer test. See *Williams,* 552 F.3d at 938; *Peviani v. Natural Balance, Inc.,* --- F.R.D. ----, 2011 WL 754958, at *3 (S.D. Cal. Feb. 24, 2011); *Yumul,* 733 F. Supp. 2d at 1125.

Here, Plaintiff has sufficiently alleged a CLRA claim under California Civil Code sections 1770(a)(5) and (7). Plaintiff has alleged that "In violation of Civil Code §1770(a)(5), Defendant represented that the Product has characteristics, ingredients, uses, and benefits which it does not have; and…[i]n violation of Civil Code §1770(a)(7), Defendant represented that the Product is of a particular standard, quality, or grade, which it is not." FAC ¶ 88. Plaintiff supports these allegations throughout the First Amended Complaint by pointing specifically to the allegedly deceptive nature of the representations made on the Product PDP and Snapple's website, as noted above.

Plaintiff further alleges that these representations caused her to purchase the Product and ultimately caused her financial loss. Id. ¶ 35.

The CLRA also requires plaintiffs who seek damages to provide notice of their claims to the allegedly offending parties at least thirty days before amending to seek damages under the CLRA. Cal. Civ. Code § 1782(d). Plaintiff has alleged that she "notified Defendant, by and through a letter sent by registered mail, return receipt requested, to James L. Baldwin, Jr., General Counsel for Dr Pepper Snapple Group, Inc., of the particular violations of Section 1770 of the CLRA, and demanded that it take certain corrective actions", but that Defendant failed to do so. FAC ¶ 15:12-18.

Thus, Plaintiff contends she has adequately stated a CLRA claim.

### 5.   The Breach of Warranty claim is properly stated.

Under California law, "(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; (c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." Cal. Com. Code § 2313(1).

Thus, to state a claim under a theory of breach of an express warranty, Plaintiff must allege that Defendant (1) made affirmations of fact or promises regarding the Product, (2) those affirmations or promises became part of the basis of the bargain between the parties, (3) the express warranty was breached, and (4) the breach caused injury to Plaintiff. Cal. Com. Code § 2313(1); see *Keith v. Buchanan,* 173 Cal. Appl. 3d 13, 20 (Cal. App. 1985). "A description of the goods can create an express warranty as long as that description became part of the basis of the bargain between the parties." *McKinniss v. Sunny Delight Beverages Co.,* No. CV 09-02034, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007).

Plaintiff alleges that she and each member of the purported class "formed a

contract with Defendant at the time Plaintiff and the other members of the Class purchased the Product." FAC ¶ 94. Plaintiff alleges that "terms of that contract include the promises and affirmations of fact made by Defendant on its Product labels and in the marketing of the Product as described above." Id. ¶ 95. Plaintiff alleges that these "promises and affirmations of fact constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other." Id. ¶ 96. Plaintiff also alleges that "[a]s a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Product at issue" Id. ¶ 99.

Defendant argues that the Plaintiff's breach of express warranty claim fails because "the complaint does not plausibly allege that Snapple breached any alleged warranty." Motion 8:8-9. However, Plaintiff plainly alleges that "Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by failing to provide a product with the promised benefits described above." FAC ¶ 98.

Thus, Plaintiff contends she has sufficiently alleged a breach of express warranty claim.

## C.   Plaintiff Readily Meets the Standing Requirements to Bring This Action.

In *Kwikset,* California's Supreme Court held that held that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Prop. 64, and have standing to sue." *Kwikset Corp.,* 2011 WL 240278 at *1.

The Court adopted a two-part test for interpreting the "lost money or property" standing requirement. According to the Court, a party "must [] (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Id. at *5.

With regard to injury, the Complaint states that: "Plaintiff and the Class have suffered injury in fact and have lost money as a result of Snapple's false representations. The Product, as purchased by the Plaintiff and the Class, was and is unsatisfactory and worth less than the amount paid for it. Plaintiff would not have purchased the Product, but for Snapple's representations that consuming the Product would boost her immunity and good health." FAC ¶ 35-36.

The proper measure of damages for claims such as those asserted here is the difference between the amount the plaintiff paid and the value of what was received. *Cortez v. Purolater Air Filtration Prods. Co.,* 23 Cal. 4th 163, 174, 177 n.10 (2003). Cal. Civ. Code § 3343[5] provides for a similar measure of damages for fraud. Damages for breach of an express warranty also are similar.[6]

---

[5] Civil Code § 3343 provides in pertinent part as follows:

    (a)    One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

        (1)    Amounts actually and reasonably expended in reliance upon the fraud.

        …

    (b)    Nothing in this section shall do either of the following:

        (1)    Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

        (2)    Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled.

[6] Section (2) and (3) of Commercial Code § 2714 provides that:

    (2)    The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Therefore, Plaintiff has properly pleaded her basis for damages.

As for reliance, Plaintiff's Complaint states that, "[i]n purchasing the Product, Ms. Meaunrit saw and relied on the labeling and advertising for it. … The labeling and advertising for the Product was designed to encourage consumers to purchase the Product." FAC 3:8-15. The California Supreme Court held that a plaintiff does not "need to demonstrate individualized reliance on specific misrepresentations to satisfy the [UCL (and FAL)] reliance requirement." *In re Tobacco II Cases,* supra, 207 P.3d at 41.

> …while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct. Furthermore, where, as here, *a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.*

Id. (emphasis added).

As established above, Plaintiff has properly met the standing requirements to pursue a representative action on behalf of others.

**D.      Should the Court Find the First Amended Complaint Deficient in Any Way, Plaintiff Can Readily Cure by Amendment.**

Although Plaintiff contends that the FAC has been fully and properly pleaded in all respects, if the Court should find any portion of it deficient in any way, Plaintiff contends that the deficiency can be remedied. Therefore, Plaintiff respectfully requests leave to amend to cure any allegations the Court considers insufficient.

### IV. CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Motion be denied

---

(3)   In a proper case any incidental and consequential damages under Section 2715 also may be recovered.

in its entirety. However, as noted above, if the Court finds any aspect of the pleading insufficient, Plaintiff contends that it can be cured and respectfully requests leave to amend in order to do so.

Respectfully submitted,


HEWELL LAW FIRM

Dated: April 27, 2011

By: /s/ Harold M.Hewell
    Harold M. Hewell

Howard W. Rubinstein
(Fla. SBN: 104108)
*howardr@pdq.net*
LAW OFFICE OF
HOWARD W. RUBINSTEIN
P.O. Box 4839
Aspen, Colorado 81612
(832) 715-2788 · (561) 688-0630 (f)
*(To apply as counsel pro hac vice)*

*Attorneys for Plaintiff*